## Mertz Estate

*Smith, Cahall & Aker,* for petitioner.

*Prince, Prince & Leiby,* for respondent.

TAXIS, P. J., April 24, 1961.—This matter comes before the court on petition filed by the administrator for a citation directed to J. Robert Chittick to show cause why he should not deliver to petitioner a certificate of title to a certain 1950 Dodge truck with the encumbrance noted thereon in favor of J. Robert Chittick marked cancelled. The facts are not in dispute. Decedent in his lifetime executed a judgment note in favor of J. Robert Chittick entered of record in Montgomery County. As part of the same transaction, the aforementioned certificate of title was given to J. Robert Chittick and an encumbrance was noted upon the face thereof in his favor.

The administrator contends that there is no enforceable security interest in the vehicle because no written security agreement was executed, and cites section 9-302 of the Uniform Commercial Code as the applicable law. This section provides that if a secured party does not have possession of the collateral, the debtor must sign a security agreement which contains a description of the collateral before the security interest is enforceable against the debtor or third parties.

J. Robert Chittick, respondent, contends, however, that such a written security agreement is unnecessary and points to section 9-302 of the Uniform Commercial

Code of April 6, 1953, P. L. 3, which provides that if a statute requires that a lien or encumbrance be noted on a certificate of title, then filing of a financing statement is not required to perfect a security interest.

The Vehicle Code of May 1, 1929, P. L. 905, as amended, section 203, provides:

"(*a*) A certificate of title shall contain such description and other evidence of identification of the motor vehicle, trailer or semi-trailer for which it is issued as the secretary may deem necessary, together with a statement of any liens or encumbrances which the applicant may show to be thereon, together with the names and addresses of the holder or holders of any such liens or encumbrances."

Section 203 (*b*) of The Vehicle Code provides, inter alia, that such notations of a lien or encumbrance on the certificate of title shall be adequate notice to creditors.

Section 203 of The Vehicle Code establishes a method of creating liens on motor vehicles without the necessity of transferring possession: Friedman v. Steibel, 185 Pa. Superior Ct. 100. Although section 9-203 of the Uniform Commercial Code, cited above, requires a signed security agreement containing a description of the collateral, the Uniform Commercial Code Comment, 12A PS page 375, states:

"The only requirements in cases not involving land are (a) a writing; (b) the debtor's signature; and (c) a description of the collateral or kinds of collateral": Girard Trust Corn Exchange Bank v. Warren Lepley Ford, Inc. (No. 2), 13 D. & C. 2d 119.

The same comment indicates that the formal requisites stated in the section are in the nature of a Statute of Frauds and are imposed to prevent the creditors who have neglected the simple formality of obtaining a signed writing to establish by parol evidence a secured status. In the present case, there is written evidence

of the security agreement and parol evidence of the security agreement is unnecessary. The certificate of title with the encumbrance noted thereon is itself evidence of the security agreement. Debtor must have contemplated a security interest when he permitted the certificate of title to be marked with an encumbrance. It seems inequitable to conclude that under these circumstances no security exists. For these reasons, and in accordance with the language of Friedman v. Steibel, supra, to the effect that The Vehicle Code establishes a method of *creating* liens, this court decides that there is a valid, enforceable security interest in the 1950 Dodge truck in favor of J. Robert Chittick.

And now, April 24, 1961, the petition for citation directed to J. Robert Chittick to show cause why order should not be entered directing that he deliver to petitioner the certificate of title to a certain motor vehicle with the encumbrance noted thereon be marked cancelled is dismissed.

## Commonwealth v. Schlesinger

*W. S. Doty* and *John T. McTernan*, for petitioner.

*George H. Ross, John Murphy* and *William Cercone*, Assistant District Attorneys, for Commonwealth.

PER CURIAM, December 11, 1951.—The above-named defendant on July 6, 1951, filed a petition to quash proceedings at the above-captioned information number, and a rule was granted on the district attorney to show cause why the prayer of the petition should not be allowed, and an answer to the petition was duly filed.

Numerous reasons are listed in the petition and the pertinent ones for the disposition of the rule now before us might be digested as follows:

1. That defendant is an attorney at law and has been a member of this and the appellate courts of the Commonwealth continuously for the past 24 years and maintains a law office in Pittsburgh.

2. That the return of the justice of the peace has been kept in the office of the district attorney and not in the clerk of courts office in violation of court rule 16, secs. 1 and 2.

3. On June 11, 1951, at about 3:45 p.m., defendant was arrested at a bus station at Tenth Street, Pittsburgh, as he was leaving for his home for the day, by Constable Fred B. Alberts, on a warrant issued by Justice of the Peace Rudolph Antoncic, of Port Vue Borough, said warrant specifically stating that there was to be no bail, in violation of article 1, sec. 14, of the Constitution of the Commonwealth.

4. Said arresting officer failed to issue to defendant upon demand, a certificate required by the Act of 1915, P. L. 76, sec. 1, 19 PS §54.

5. Said arresting officer placed defendant in handcuffs, took him into an automobile in which he was slowly driven to Port Vue and then back to Allegheny County Jail, with as much delay as possible, without seeing the justice of the peace and was finally delivered to the jail at 6:27 p.m., although said jail was only half a mile from the place of the arrest. That this delay in delivering defendant to the Allegheny County Jail under the warrant forbidding bail was for the apparent reason to have the newspaper photographers on hand and that a photograph of defendant being delivered to jail appeared in the public press the next day.

6. That defendant was lodged in a narrow dark cell in the cellar of the jail; was refused permission to telephone his counsel or his wife to explain what had become of him; was periodically asked if he would submit to questioning and when he refused to give any information other than his name, address and the name of his counsel whom he wished to communicate with, an assault and battery was committed on his person by one of the guards at the prison.

7. Finally defendant was permitted to telegraph his counsel who eventually contacted the president judge of this court by telephone and the president judge gave a telephone order direction to the warden to release defendant on his own recognizance at 1:10 a.m., June 12, 1951.

8. That defendant's hearing commenced in the office of the justice of the peace in Port Vue at 8 p.m. (D.S.T.) June 12th and continued for three hours with newspaper photographers in attendance. That said hearing was conducted as a spectacle rather than a judicial proceeding; that the private prosecutor was the sole witness and that, because of the interference by his attorney, defendant's counsel was not permitted the right of relevant cross-examination of said prosecutor and it was frequently stated that the cross-examination would be prohibited until defendant agreed to be sworn in advance thereof and to take the witness stand in his own behalf; that when defendant's counsel stated the decision as to whether defendant would take the witness stand would be made when the cross-examination of the prosecuting witness was terminated, the justice said that the hearing was over.

9. That the testimony did not make out a prima facie case against defendant, although he was held for court.

10. That the prosecutor or his counsel employed a qualified stenographer who appeared to have a full record of the proceedings; that defendant's counsel in advance of the hearing requested a duplicate copy of the transcript of the testimony at defendant's expense but that the prosecuting counsel directed her not to furnish a copy to defendant under any circumstances; that later, when an attempt was made to purchase a copy from this stenographer, the prosecutor's counsel had already paid for all copies of the transcripts prepared by her and likewise appropriated her stenographic notes, as she stated.

11. That the district attorney's office had an assistant D. A. on hand at the hearing solely as an observer and that the stenographer who accompanied him was unable to take a verbatim record of the testimony, but only a mere outline of same.

12. That the committing magistrate is guilty of misdemeanor in office in that he violated the Act of 1885, P. L. 110, sec. 1, 42 PS §722, in binding defendant over on the charge of sedition which is a felony, on June 12, 1951, and did not file a transcript of his docket with the clerk of courts within five days, but delayed filing same until June 20, 1951.

13. That the justice of the peace, although permitting defendant's counsel to see the original information, nevertheless refused, on demand, to provide defendant with a copy of the information in violation of the Act of 1810, P. L. 208, 5 Sm. L. 161, sec. 23, 42 PS §761.

14. That the information is vague, indefinite and illegal as it fails to specify any time, place, person or details and, therefore, is defective for lack of notice as to the charge against defendant; and that neither said information nor evidence produced at the hearing shows any crime was committed.

15. That the court, district attorney and the grand jury are without jurisdiction to entertain any proceedings under said information or to proceed further therewith for the purpose of presenting the matter to the grand jury to obtain an indictment for the reasons stated in the petition.

The district attorney did not initiate these proceedings. However, in compliance with the rule granted, an answer has been filed and that part of the testimony which a stenographer in the office of the district attorney was able to take down is attached to the answer and designated exhibit "A". It is submitted in the answer that this testimony makes out a prima facie case against defendant; that the alleged seditious acts of defendant occurred within the jurisdiction of this court and that the proceeding is not outlawed by the statute of limitations.

The answer does not deny any of the other averments in the petition, but rests on the premise that they are irrelevant or immaterial in a motion to quash an information.

Defendant's brief covers many pages in discussing the testimony as set forth in exhibit "A" to the answer, and then argues that a prima facie case against the defendant had not been made out. However, this question cannot be raised on a motion to quash an information. If defendant wished this subject to be ruled upon by the court, he should have permitted himself to remain in custody and then sworn out a writ of habeas corpus under the Act of July 1, 1937, P. L. 2664. The Commonwealth would then have been required, de novo, to submit testimony before a hearing judge that would make out a sufficient case to bind defendant over for the grand jury action.

The record discloses that, after the president judge directed the warden to release defendant, the next morning his wife became his surety and posted government bonds with the clerk of courts in the value of $1,500. On June 17, 1951, an order was made releasing defendant on his own recognizance, and on June 29, 1951, the clerk of courts was authorized to return the bonds to defendant's wife. Technically, therefore, he is still out on bail.

This motion to quash proceeding is timely since the grand jury has not yet acted upon the information as returned. See Commonwealth v. Fedulla, 89 Pa. Superior Ct. 244. The other reasons given in the petition singly would probably not support a motion to quash an information. However, collectively they do clearly indicate that our judicial criminal procedure was ignored if not flaunted. We are unanimous in our conclusion that defendant was denied his State constitutional and statutory rights and protection; that the admitted activities or nonactivities following his

arrest denied to defendant due process of law and equal protection of the law under the fourteenth amendment of the United States Constitution and that, therefore, all of the proceedings become null and void and that, if the authorities deem it meet, same should recommence with another information against defendant. Therefore, the motion to quash proceedings will be granted and the rule to show cause made absolute in an appropriate order.

### Order

And now, December 11, 1951, after argument, consideration of briefs and the record, the petition to quash proceeding based on the returned information, supra, is granted and the rule to show cause is hereby made absolute. County to pay costs.